# Delaware County Institute of Science *versus* Delaware County.

94  163
128  147
94  163
160  583

An institute of science whose object is the " promotion and diffusion of general and scientific knowledge among the community at large, and the establishment and maintenance of a library and museum," but the benefits of which are restricted to members, except upon conditions prescribed by a board of managers, is not a " purely public charity," within the meaning of the Constitution, and is not, therefore, as such, exempt from taxation.

March 24th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Delaware county* : Of January Term 1880, No. 29.

Amicable action in the form of a case stated, wherein the county

[Delaware County Institute of Science *v.* Delaware County.]

of Delaware was plaintiff, and the Delaware County Institute of Science, defendant, to recover a county tax assessed and levied on the real estate of the defendant in the borough of Media, for the year 1878.

It was agreed that a trial by jury should be dispensed with, and the case submitted to the court under the provisions of the Act of April 22d 1874.

The decision of the court, Clayton, P. J., was as follows:

" From the admissions of counsel and the evidence in the case, the following facts are found : The defendant is a corporation, duly charted by authority of the state of Pennsylvania. The object of the corporation, as declared in its constitution and by-laws, is to promote the diffusion of general and scientific knowledge among its members and the community at large; and the establishment and maintenance of a library, an historical record and a museum. The institute consists of members and correspondents. Members are admitted, after being proposed by two members at a previous meeting, by a vote of not less than three-fourths of the members present. No person shall be entitled to membership until he has signed the constitution and paid the initiation fee. The right to vote and hold office is confined exclusively to the members. Candidates for membership are voted for by secret ballots of white and black balls. The library is under the general charge of a standing committee. The committee has power, with the approval of the institute, to make rules for the regulation of the library and use of the books. Any person, not under fifteen years of age, approved by the library committee, may become a member of the library for life by the payment of the sum of $50. Such person may become an annual member by the payment of the yearly sum of $3 in advance. Membership in the library does not entitle the person to membership in the corporation, nor confer upon him any of the rights of a corporator. Members of the institute are entitled to life membership in the library by the payment of $20, and to annual membership on the payment of the yearly sum of $2 in advance.

" The library committee may permit persons not members to use the library on such terms as they may prescribe, and shall issue tickets of admission to all persons entitled to use the library. No person is entitled to enter the library or read the books without such ticket, except members of the institute, and no person shall receive such ticket who has not paid all fees, fines, &c. Those persons who were members previous to October 5th 1872, are not subject to any restrictions or conditions as to the use of the library. No person, not a member, can have the use of the library without the payment of the annual sum of $3.

" The corporation owns by deed in fee-simple, free from all trusts or limitations, a lot of ground and the institute buildings thereon

erected, situate on the east side of South avenue, in the borough of Media, upon which a county tax of $17.50 was regularly assessed for the year 1878. Parts of the building are rented for purposes other than those of the institute, but the revenues are applied to corporate uses, such as the supply of the library, museum, repairs, &c. All donations to the institute have been absolute and without direction as to their use or application. The present membership is about two hundred.

" The above are all the material facts in the case.

" The question is, whether under the constitution and laws of the state, the lands of the corporation are exempt from taxation ? The solution of this question depends upon the nature and character of the corporate object of the institution. If its object is the performance of a purely public charity, it is exempt from taxation ; if not, no matter how meritorious or charitable its purposes, it must, like other owners of real estate, bear its share of the public burden of taxation.

" It is undoubtedly a charity, and to a large extent a public charity ; but, from the evidence before me, I cannot find it to be a purely public charity. As was decided by this court in the case of The Burd Orphan Asylum v. The School District of Upper Darby, 9 Norris 21, the Act of 1874, must be read in connection with the state Constitution, and the institutions named in that act must be construed to mean such as are founded and maintained as purely public charities, as contra-distinguished from private or partially public ones. The society of Masons, Odd Fellows, and kindred associations are undoubtedly charities, but not purely public ones, and, therefore, their real estate is not exempt from taxation. The society of Odd Fellows is not much, if any, less exclusive than The Delaware County Institute of Science. Its members are elected in the same way, and its funds are collected upon a very similar plan. The chief benefit of each is confined to its own members, and is not disseminated over the general public. The test of all public charities is their extensiveness. If the general benefits of a charity are subject to private preferences or conditions by which a large proportion of the general public will probably be excluded, it is a private charity, and therefore, not within the protection of the Act of Assembly. See School District v. Burd's Orphan Asylum. The Philadelphia Library Co. v. Donohugh, 5 Norris 306, is the case chiefly relied upon by the defendant's counsel. A careful study of the opinion of Judge Mitchell, upon which the judgment was affirmed in the court above, will exhibit several marked differences in the facts, as compared with the case now under consideration. In that case the organic law required the librarian to permit ' any civil gentleman to peruse the books of the library in the library room.' ' The books are to be used by all persons within the building, free of charge or fee of any kind.'

[Delaware County Institute of Science *v.* Delaware County.]

'They can be taken out by any person, who is willing to pay a small hire and leave a deposit, equal to the value of the book as security for its return. The library is free to all persons who wish to commute or pay an annual sum instead of a separate hire.' In the Delaware County Institute nothing of the kind can be done, except by grace. In the Phila. Library Case, the court below says: 'The essential feature of a public use is that it is not confined to privileged individuals but is open to the indefinite public. It is this indefinite or unrestricted quality that gives it its public character. The smallest street in the smallest village is a public highway, and none the less so because a vast majority of the citizens will certainly never derive any benefit from its use. It is enough that they may do so if they chose.' In the present case no person can derive any benefit from the library of the institute without being a member or a contributor, and even this privilege will depend upon the will of the library committee and the librarian. I do not wish to be understood as unfavorably commenting upon any of the regulations of the institution, on the contrary its objects are of great public importance, and are deserving of our highest commendation, and its rules appear wise and proper. All that is now decided is that it is not a purely public charity, and, therefore, not exempt from taxation.

"In the view of the court, no corporation or institution is a purely public charity, which is not under the control or supervision of the public authorities; or, at least, subject to public visitation; or, is founded and endowed so as to give the general public, under reasonable restrictions, an absolute right to receive its benefits, and, in case of failure of its managers to carry out the founder's will, to compel compliance therewith by an application to the courts. In case of a dissolution of such a charity, its property must vest in the public authorities for charitable uses. No institution whose property is owned in fee, and is under no control except that of the corporation, and from the use of which the general public may be excluded, or which may be sold without power in any one to prevent it and the proceeds be diverted to other uses, according to the will of the owners, can in any reasonable construction, be called a purely public charity. The Delaware County Institute of Science would hardly admit the right in the court to appoint an official visitor with authority to examine its management, and enforce the will of the founders of the institution by the removal of its managers and the appointment of new ones; and yet no corporation is a purely public charity that is not subject to the exercise of such powers.

"An essential element of a public charity is the right of public visitation for the correction of abuses and the enforcement of the founders' will. I can find no power outside of the membership of this society to prevent a sale of its lands free from all trusts or

encumbrances, and a distribution of the proceeds as the members may desire. They may also sell their library and divert the proceeds to other objects without the consent or interference of the general public."

Judgment for the plaintiff for $17.50, with costs.

Defendant took this writ, and alleged that the court erred in deciding that the defendant is not a purely public charity, and in deciding that the defendant is liable to taxation.

*John M. Broomall*, for plaintiff in error.—It is submitted that an institution of learning that is open to all persons, for the diffusion of useful, scientific and literary information, that has no stock, no stockholders, and can make no profit for anybody, and that is not under the control of a sect, party or class of persons, that is neither money making, political nor sectarian, is necessarily a purely public charity. It is held in Donohugh's Appeal, 5 Norris 318, that the exemption embraces "private institutions for purposes of purely public charity and not administered for private gain," and this ought to dispose of the whole question.

*H. C. Howard*, for defendant in error.—There is nothing whatever in the constitution of this society to prevent it from closing its doors to all except some preferred class. The fact that it does not do so now is of no consequence. In order to render it a purely public charity, there must exist somewhere in its organic law—which cannot be changed without the intervention of a court—some provision which requires it to be maintained as a public charity. That is to say, the institute here having nothing in its charter which compels its property to be for all time subject to the public use—the public use is not pure, and while it is undoubtedly public in the ordinary acceptation of the term, yet it is not exempt from taxation.

The judgment of the Supreme Court was entered, May 3d 1880,

Per Curiam.—The plaintiff in error, so far from being a purely public charity, is not a public charity at all. It is a private corporation for the benefit of its members, as much so as any other beneficial or literary society. It might permit others than members to use the library, but nobody could call it to account for refusing such permission. It is clearly not within the principles settled by the court in Donohugh's Appeal, 5 Norris 306.

Judgment affirmed.