The Barnes Foundation v. Keely et al., Appellants.

Argued October 10, 1932.

Before T<small>REXLER</small>, P. J., K<small>ELLER</small>, G<small>AWTHROP</small>, C<small>UNNINGHAM</small>, B<small>ALDRIGE</small> and P<small>ARKER</small>, JJ.

*Theodore F. Jenkins,* Solicitor for School District, and with him *Mayne R. Longstretch,* Assistant City Solicitor, and *David J. Smyth,* City Solicitor, for appellants, cited: Donohugh's Appeal, 86 Pa. 306; Philadelphia v. Masonic Home of Penna., 160 Pa. 572; Delaware Co. Institute of Science v. Delaware Co.,

94 Pa. 163; Thiel College v. Mercer County, 101 Pa. 530.

*Robert T. McCracken* of *Montgomery & McCracken,* and with him *Philip C. Pendleton,* for appellee, cited: Episcopal Academy v. Philadelphia et al., 150 Pa. 565; Taylor v. Hoag et al., 273 Pa. 194; Donohugh's Appeal, 86 Pa. 306; Mercersburg College v. Mercersburg Borough, 53 Pa. Superior Ct. 388; County of Northampton v. Lafayette College, 128 Pa. 132.

OPINION BY BALDRIGE, J., January 25, 1933:

This appeal is from an order of the court below sitting in equity, restraining the appellants from collecting city, school and county tax due, or to be hereafter assessed, against premises known as 4525 Spruce Street, Philadelphia, owned in fee simple by the Barnes Foundation, hereafter known as the Foundation.

The Foundation is a corporation of the first class under the laws of the Commonwealth of Pennsylvania, not organized for profit, having its principal place of business in the township of Lower Merion, county of Montgomery, Pennsylvania. The purpose for which the corporation was formed is to promote the advancement of education and the appreciation of the fine arts.

The learned chancellor found on the testimony of Professor John Dewey, the eminent philosopher and educator, and other qualified witnesses, the following facts, to wit: The Foundation is a recognized educational institution, holding regular classes for the instruction of students of art. It is not confined to privileged individuals, but students are admitted without regard to race, color or sex, and no applicant for instruction is barred, except for drunkenness, incompetency, or necessary limitation in the number that may be accommodated. No tuition is charged, but, to the contrary, financial aid is given to worthy students.

The Foundation represents an investment in pictures of upwards of five million dollars and has an endowment of approximately ten millions. To carry out its aims, it acquired a tract of land in Lower Merion Township, upon which is erected, at great cost, a suitable building, used as an art gallery, in which is housed a unique collection of modern works of art. The grounds are laid out as an elaborate arboretum, wherein trees and shrubs are cultivated and grown for the study and encouragement of arboriculture and forestry. A new building was essential to carrying on the work and, in order not to disturb the planting in Montgomery County and its artistic effect, the Spruce Street property was purchased, and is used for administrative, literary and miscellaneous purposes necessary for the efficient discharge of the corporate functions.

Two questions present themselves in this. appeal: (1) Is the Foundation a purely public charity; and (2) is the Spruce Street property necessary to the enjoyment of the main purposes of its charter rights, or is this property used, as appellants contend, for commercial purposes?

(1) Article IX, §1, of the Constitution of Pennsylvania, as amended November 6, 1923, reads: "All taxes shall be uniform; ...... but the general assembly may, by general laws, exempt from taxation public property used for public purposes, ...... institutions of purely public charity." The Legislature, in pursuance of the powers conferred upon it, passed an act, approved April 30, 1925, P. L. 388, §1 (72 PS §4701), providing that "all hospitals, universities, colleges, seminaries, academies, associations, and institutions of learning, benevolence, or charity, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by the public or private charity: ...... be, and the same are

hereby, exempted from all and every county, city, borough, township, bounty, road, school, and poor tax: Provided, That all property, real or personal, other than that which is in actual use and occupation for the purpose aforesaid, and from which any income or revenue is derived, shall be subject to taxation.''

The question as to what constitutes a purely public charity, as used by the Legislature, has been frequently passed upon by our appellate courts. The difficulty that continues to arise is whether the given facts come within the accepted tests. It has been held that ''whatever is gratuitously done or given in relief of the public burdens or for the advancement of the public good is a public charity. In every such case as the public is the beneficiary, the charity is a public charity. As no private or pecuniary return is reserved to the giver or any particular person, but all the benefit resulting from the gift or act goes to the public, it is a 'purely public charity,' the word 'purely' being equivalent to the word 'wholly.' The education of youth and the support of schools are for the advancement of public good'': Episcopal Academy v. Phila., 150 Pa. 565, 573, 25 A. 55. Mr. Chief Justice FRAZER, speaking for the court in the case of Taylor v. Hoag et al., 273 Pa. 194, 196, 116 A. 826, said: ''The word 'charitable,' in a legal sense, includes every gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. In its broadest meaning it is understood 'to refer to something done or given for the benefit of our fellows or the public': Knight's Est., 159 Pa. 500, 502.'' It was said in Donohugh's App., 86 Pa. 306, 313: ''So there is no charity conceivable which will not, in its practical operation, exclude a large part of mankind, and there are few which do not do so in express terms, or by the restrictive

force of the description of the persons for whose benefit they are intended. Thus, Girard College excludes, by a single word, half the public, by requiring that only *male* children shall be received; the great Pennsylvania Hospital closes its gates to all but *recent* injuries, yet no one questions that they are public charities in the widest and most exacting sense." In Vidal et al. v. Girard Exrs., 2 How. 127, 11 L. Ed. 205, it was held that the provisions in the will of Stephen Girard, excluding a minister from holding office in Girard College, or visiting same, did not destroy the charitable nature of the college. See also Mercersburg College v. Mercersburg Borough, 53 Pa. Superior Ct. 388; County of Lancaster v. Y. W. C. A. of Lancaster, 92 Pa. Superior Ct. 514; County of Northampton v. Lafayette College, 128 Pa. 132, 18 A. 516; House of Refuge v. Smith et al., 140 Pa. 387, 21 A. 353; Phila. v. Penna. Hospital for the Insane, 154 Pa. 9, 25 A. 1076; The Contributors to the Penna. Hospital v. The County of Delaware et al., 169 Pa. 305, 32 A. 456.

The appellants contend that this case does not come within the principle enunciated in the foregoing decisions, as Dr. Barnes, in his testimony, indicated that the gift was with qualifications, and that he intended to retain control of the property to such an extent that the privileges of the Foundation were confined to certain persons—not an indefinite public, and its continuance was "subject to his wishes." It is true that Dr. Barnes, in answer to a question as to the financial extent of the investment, said: "Yes, but don't forget that there is a string on that. If the people do not behave around here I pull that string back and it all drops in my lap. I don't expect to pull it unless they hit me too hard." That, doubtless, was an inconsiderate statement, and, at most, was but an expression of his opinion, not warranted by the deed of trust, as, under its provisions, he does not have control of the

disposition of the assets. The rights, duties and privileges are subject to the charter and the trust agreement, and they cannot be altered by what Dr. Barnes may say or think. Paragraph 32 of the deed of trust reads as follows: ''The conveyance of the said real estate, together with the arboretum thereupon situate, the buildings, fixtures and appurtenances thereon or thereunto belonging and appertaining, by donor to donee shall be irrevocable ....... If, at any period during the lifetime of the donor, the board of trustees decide that the experiment is a failure, they may, by appropriate resolution, dispose of the *paintings* (italics ours), by gift or otherwise, to any individual, institution, museum, school or college, specified by the board of trustees.'' It is unnecessary to determine whether the deed of trust irrevocably subjects the paintings at all times to its provisions if they are transferred to another individual or institution, should the Foundation cease to exist. The exemption from taxation now claimed is not on the paintings, but on the real estate, which undoubtedly is irrevocably vested in the Foundation. In addition, a grant of land is not required to be in perpetuity to make it a purely public charity. If it ceases so to be, equity will grant relief: White v. Smith, 189 Pa. 222, 232, 42 A. 125.

Nor do reasonable regulations for admission of the public destroy the charitable nature of this gift. Undoubtedly, the Foundation may impose certain limitations respecting qualifications, or the time or times at which the public may have the opportunity to visit the gallery. Unless certain rules and regulations are enforced, it might defeat the very purpose of the gift by interfering with, if not entirely preventing, intelligent study of the works of art and the proper educational development of the students. In Delaware County Institute of Science v. Delaware County, 94 Pa. 163, the court held that a library and museum, open

to the public under certain conditions, were not exempt. We all recognize that an art gallery has its cultural value, but it is not an educational institution within the contemplation of the law. Nor do we think the decision in Phila. v. Masonic Home of Pa., 160 Pa. 572, 28 A. 954, is controlling, as Masons only are eligible to be admitted to that home. We may add, however, that the court there recognized that a charity may impose certain restrictions, if not too exclusive, and still be public.

(2) The appellants contend further that if it be determined that the Foundation is a purely public charity, the Spruce Street property is not exempt from taxation as it is used for commercial purposes only, and no classes for the instruction of art, or any other subject, are held there. The chancellor found, on sufficient evidence, that this building is used exclusively for the transaction of literary, clerical and miscellaneous matters necessary to carry on the work of the Foundation. The basement is used for storing and packing the educational books written by members of the staff and sold to various schools, colleges, universities, and art galleries throughout America. The rest of the building is used for purposes incidental to the business of the Foundation, and by the president and two of the teachers in the performance of their work, which includes writing and editing books, etc. The publication is an important part of the educational program. True, the books are sold, but the uncontradicted evidence is that this is not a commercial undertaking, as the publication and sale always entail a financial loss. We conclude that the purpose is not to make money, but to discuss and give expression to certain views, etc., relative to art and its allied subjects. Whatever income there may be, in such circumstances, does not destroy the character of a charitable, educational institution. Nor do we think that

teaching must be done in that particular building to make it educational. There are many buildings on every campus, as a rule, where classes do not convene, but which are indispensable to the wise administration of the affairs of the institution. Such buildings are as much a part of the plant as those containing class rooms, provided, of course, they are reasonably, rather than absolutely, necessary to the purposes of the purely public charity: County of Lancaster v. Y. W. C. A. of Lancaster, supra. The chancellor found that the Spruce Street premises are used exclusively for the purposes of the Foundation and are necessary for the efficient discharge of its functions. We have no reason for disagreeing with that conclusion.

Our attention has been called by the appellants to the decision recently handed down by the Supreme Court in the case of City of Harrisburg v. Trustees of Harrisburg Academy, 308 Pa. 585, 162 A. 815. There is a clear distinction between that case and the one at bar, as tuition ranging from $650 to $1,060 per year was charged for boarding students, and from $320 to $440 per year for day students. The academy is not open to all who apply within the capacity of the school, but is restricted to those whom the headmaster, in his discretion, sees fit to admit, and, in addition, it is not required to employ the annual profits to the improvement of the school, but they may, under the charter rights, be distributed to the members of the corporation.

After a careful consideration of the arguments of able counsel, and a review of the record, we find ourselves in entire accord with the conclusion of the chancellor and the learned court below.

Decree affirmed at the cost of appellants.