## Rothschild Estate

*Daniel C. Cohen* and *Leonard J. Cooper,* of *Wolf, Block, Schorr & Solis-Cohen,* for accountants.

*D. Arthur Magaziner* and *Berthold W. Levy,* for trustee and executor.

*Morton Craine,* for accountants.

*Samuel E. Dennis,* for Temple Beth Hillel-Beth El.

*James L. Price,* for Commonwealth, as parens patriae.

KLEIN, A. J., February 23, 1973.—Benjamin S. Loewenstein, I. Jerome Stern, Daniel C. Cohen, Mayer I. Blum, Jacob C. Gutman, Samuel A. Green, Solomon Grayzel, Albert M. Cohen and Benjamin Hoffman, succeeding trustees under Deed of Trust of Edward L. Rothschild, settlor, dated September 8, 1915, have filed a first account stated from September 8, 1915, to February 1, 1972.

By writing dated May 28, 1914, Edward L. Rothschild offered Congregation Beth El of Philadelphia to erect a synagogue building for the congregation on land in West Philadelphia to be selected and purchased by him under certain terms, stipulations, conditions and provisions set forth in the offer. On June 2, 1914, the offer was accepted by the congregation.

The following conditions and provisions were set forth in the offer of May 28, 1914, as recited in the agreement dated August 25, 1915, and the deed of indenture dated September 8, 1915, described below:

"1. The Congregation in its service and in the conduct of the school and in its teachings as well as in all other ways appertaining to its management and direction shall be devoted to the preservation of the knowledge and practice of historical Judaism as contained in the laws of Moses and expounded by the Prophets and Sages of Israel in Biblical and Talmudical writings.

"2. The synagogue shall be erected on land situated in West Philadelphia to be selected and purchased by the donor. Said land and the building thereon shall be in the name of the donor and paid for by him together with the furniture thereof and on its completion he will convey the same to nine trustees to be

named by him who shall see to it that the conditions and agreements relating to said gift are carried out and complied with. Each of said trustees shall continue to act during the term of their respective lives or until any of them resigns in which event the remaining trustees shall have power to name and appoint his successor and the person so appointed shall have all the authority and general power conferred on and possessed by the original trustees. Said trustees shall have power if the laws of Pennsylvania shall so warrant at any time to procure a Charter of incorporation under the name and title of 'the Trustees of the Rothschild Memorial Synagogue.' and the title to said synagogue building and the lot on which it is erected shall then be vested in and conveyed to said corporation by the said trustees.

"3. No encumbrance by way of mortgage or other lien or charge shall ever be placed by said Congregation on said lot of ground and synagogue building or upon its interest therein, nor shall the Congregation have power to sell or dispose of said lot of ground and synagogue building or any of the furniture contributed by the donor.

"4. The Congregation Beth El shall retain its present corporate name and organization. If any amendment to its Charter should be necessary in the opinion of the donor to carry out the terms of this offer on its acceptance by the said Congregation, said amendment shall be duly applied for in the Court of Common Pleas, with particular reference to the declaration of principles which is contained in Item one of this communication.

"5. The Synagogue building is designed as a memorial to my parents the late Lippman and Henrietta Rothschild.

"The Synagogue building shall be known in per-

petuity as the ROTHSCHILD MEMORIAL SYNA-GOGUE, CONGREGATION BETH EL and a suit-able permanent tablet, the wording of which shall be made by the donor shall be placed on the street front of the building and on the inside of the syna-gogue.

"6. Provision shall be made that there shall be at all times one hundred free seats in the Synagogue to be awarded to members of the Jewish Community who may be deemed worthy of being furnished with free accommodation at the services of the Congrega-tion and for the education in the school of the children of those or other deserving Jewish people.

"7. In case of the violation or alleged violation of the first stipulation and condition herein contained and the failure of said Congregation to carry out and observe the principles therein set forth, the adjudica-tion of the matter shall be left to the Trustees ap-pointed by the donor and the decision of a majority of them shall be final and binding, and the said trustees shall have power and authority on such find-ing, had after thirty days notice to the Congregation to comply with said stipulation and condition to Item 1, to reconvey said lot of ground and building to the donor thereof, his heirs, executors, administrators and assigns. The conveyance of a majority of said trustees to the donor shall work and effect a full, complete and absolute reversion of the title to him which shall then vest in him, his heirs and assigns in fee, absolutely."

Pursuant to the offer and acceptance, Edward L. Rothschild purchased a lot of ground on the northeast corner of Fifty-eighth and Walnut Streets in Philadel-phia, Pa., and erected thereon a synagogue and school building for the use and occupancy of Beth El Congregation.

On August 25, 1915, an agreement was entered into between Edward L. Rothschild and Congregation Beth El for the purpose of carrying out the terms of the offer and acceptance. And on September 8, 1915, Edward L. Rothschild and Caroline A. Rothschild, his wife, by deed of indenture, conveyed to Edward L. Rothschild, the Reverend Charles I. Hoffman, Ephraim Lederer, Jacob Krieger, Gustavus Sickles, Dr. Myer Solis-Cohen, Sigmund Strauss, Carl Herrman and Louis Blumberg, Trustees of the Rothschild Memorial Synagogue appointed by Edward L. Rothschild, land at Fifty-eighth and Walnut Streets, Philadelphia, Pa., and the synagogue and school he had erected thereon, for the use and occupancy of the congregation under the terms and conditions of the offer and acceptance hereinbefore referred to.

The indenture provided further, as recorded in Deed Book ELT 517, page 475, of the City and County of Philadelphia, that:

"IT IS UNDERSTOOD AND AGREED between the parties hereto that in carrying out the first provisions stipulated by said Edward L. Rothschild and agreed to by said congregation Beth El to wit;

" 'THE congregation in its service and in the conduct of the school and its teaching as well as in all other ways appertaining to its management and direction shall be devoted to the preservation of the knowledge and practice of historical Judaism as contained in the laws of Moses and expounded by the Prophets and Sages of Israel in Biblical and Talmudical Writings,' the said congregation shall at all times conduct its worship and services according to the ritual now in use in said congregation without change or abridgement and recite the prayer and the portion of the law and the Prophetic section in hebrew, and that the men of the congregation shall always

worship in said synagogue with covered heads and said congregation shall not at any time authorize the doing of any act in violation of the seventh day sabbath.

"THE said congregation solemnly agrees and pledges itself to observe these stipulations in good faith as the primary consideration on which this agreement is based.

"IT IS FURTHER understood and agreed by and between the parties hereto in the event that the lot of ground on which said synagogue building is located should through a change in the neighborhood to a business character become so valuable as to make it unwise and injudicious in the opinion of a majority of the trustees to continue the building for snyagogue purposes or in their opinion becomes unsuitable for synagogue purposes then and in that event said trustees shall have power and authority to sell said synagogue lot and building and the contents and from the proceeds purchase a suitable lot and erect a building in West Philadelphia for the use of said congregation the building to be the same in purpose object and name and to hold by said trustees for the uses of the congregation under the same term and conditions as the lot and building now designed for said purpose. Should the proceeds of said sale exceed the cost of said new building and lot and the balance remaining shall be the property of the donor or in the event of his decease prior to said sale shall go to his heirs, executors and administrators.

"IT IS AGREED by and between the parties hereto that no memorial of any kind other than those designated by said Edward L. Rothschild shall ever be placed in said synagogue and school building or any other building erected to take its place should the original building be destroyed by fire or otherwise or

sold as hereinbefore set forth, in the event of the destruction of said building by fire in whole or in part the trustee shall restore the same out of the proceeds of the insurance thereon said congregation shall provide adequate insurance for said building in the sum of FORTY FIVE THOUSAND DOLLARS and keep the same insured at all times. It shall likewise keep said building in good order and repair at its own expense and replace any furniture or the organ when any of these articles are worn out it shall keep the property in good condition providing adequate janitor service for the same and maintaining in it all respects as a suitable house for worship.

"THE SAID congregation further agrees that whenever in the opinion of the trustees it has failed to carry out the conditions and convenants of this agreement and said trustees acting by a majority in number shall certify that fact to said congregation by notice in writing signed by said majority and notify said congregation to deliver possession of said synagogue and school building and furniture to the trustees within three months from the date of the receipt of said notice said congregation shall within said time deliver said possession to the trustees who shall have the right at the expiration of said period to take possession of said furniture and building without any legal proceedings whatever.

"THE judgment and decision of said trustees in deciding whether the congregation has complied with the terms of the agreement shall be final absolute and binding on all the parties to this agreement."

By indenture dated July 20, 1921, Edward L. Rothschild conveyed a lot adjacent to the synagogue building to the trustees of the Rothschild Memorial Synagogue "for the purpose of permitting the erection thereon . . . of a Sisterhood building . . . to be in

memory of Caroline A. Rothschild and a school house to the rear thereof in memory of his son Lippman De C. Rothschild . . . ," subject to the same terms and conditions provided for in the deed of trust dated September 8, 1915. Still another adjacent lot, which was owned by Congregation Beth El, was conveyed to the trustees by a deed dated December 15, 1936.

Congregation Beth El merged with Congregation Beth Hillel on March 27, 1970. The merged congregation is known as Temple Beth Hillel-Beth El and is located in Wynnewood, Pa., upon a tract of land consisting of about seven and one-half acres and valued at $1,500,000.

Shortly after the merger, all religious services were terminated at the Walnut Street synagogue. The religious school building was leased to the Philadelphia School District for several years prior to the merger. A fire occurred in November 1971, which destroyed the Beth El school building and seriously damaged the synagogue building. The loss was covered by fire insurance and the trustees received $254,006.29 from the insurance company as payment for the loss.

By decree dated October 18, 1972, the court approved a petition for the sale by the trustees of the land and the damaged buildings to the Temple of Faith Baptist Church for $100,000, the terms and conditions of the sale being set forth in said petition.

The trustees have filed this account to secure approval of the transfer of the fire insurance proceeds as well as the proceeds of the sale of the real estate to the merged synagogue Temple Beth Hillel-Beth El.

We have spelled out in detail the conditions settlor imposed upon this gift because it is important to determine under what circumstances he intended to effect a forfeiture and to retain a reversionary interest.

On April 8, 1922, Edward L. Rothschild, who was a

resident of New Jersey, created a trust, designated "Rothschild Family Trust," in which he designated as trustee the Pennsylvania Company for Insurance on Lives and Granting Annuities (now The First Pennsylvania Banking and Trust Company). The trust is for settlor's daughter, Esther R. Reshower, and his son, Benjamin de Cesseres Rothschild, who died March 20, 1972, each to have an undivided one-half interest in the income for life with right to appoint principal to their descendants. When settlor died, his estate was settled in New Jersey, and, in accordance with the provisions of the will, the residue of his testamentary estate poured over and became part of the 1922 trust. Accordingly, if any reversionary right exists it is vested in The First Pennsylvania Banking and Trust Company, under the deed of April 8, 1922.

Paragraph 1 of settlor's offer of May 28, 1914, which was incorporated in the agreement of August 25, 1915, as well as the indenture of September 8, 1915, clearly establishes that Edward L. Rothschild's primary purpose in making the gift to Congregation Beth El was to build a house of worship and religious school in which the Jewish religion would be practiced in accordance with the beliefs and teachings he enunciated therein.

Paragraph 7 of the same offer, also incorporated in the agreement and the indenture, provides that in case of a violation of this condition, and failure to correct the breach after 30 days' notice from the trustees, the property was to be reconveyed "to the donor thereof, his heirs, executors, administrators and assigns. The conveyance of a majority of said trustees to the donor shall work and effect a full, complete and absolute reversion of the title to him which shall then vest in him, his heirs and assigns in fee, absolutely."

This is the only reference to a reversion to the

donor and his heirs in all of the writings pertaining to the gift to Congregation Beth El other than a provision in the deed of indenture that if the trustees decide to move the synagogue and school to another location, the difference between the proceeds of the sale of the old buildings and lot and the cost of the new buildings and lot "shall be the property of the donor or in the event of his decease prior to said sale shall go to his heirs, executors and administrators." It, therefore, follows that forfeiture and reversion to the donor and his heirs can take place *only* if the congregation in its service and in the conduct of the school and its teachings shall fail to observe the conditions prescribed in paragraph 1 of the offer.

Although the deed of indenture of September 8, 1915, was specifically made subject to the terms and conditions of the offer of May 28, 1914, and the agreement of August 25, 1915, settlor, after reaffirming the mandate of paragraph 1 of the offer, added a number of additional conditions to the gift. He directed that whenever the trustees believe the congregation has failed to carry out the conditions and covenants contained in the deed, the congregation shall, upon three months' notice, deliver "possession of said synagogue and school building and furniture to the trustees." Nothing is said about a reversion to the donor and his heirs. It must, therefore, be concluded that, in all cases in which the trustees determine that the congregation has violated the terms of the gift, the synagogue plant must be returned to them so that they may take the necessary steps to enforce compliance with the donor's wishes, except where paragraph 1 of the offer is violated, in which event the property reverts to settlor's heirs.

The trustees have filed this account seeking approval of the court to deviate from some of the terms and conditions of the trust. Since their purpose is to

devote the assets of the trust to the perpetuation of Temple Beth Hillel-Bethel, the first question we must answer is whether the proposed deviations in any way involve a breach of paragraph 1 of the offer.

The evidence that all of the religious practices and precepts mandated by the settlor were being observed at Congregation Beth El until its merger and by the merged synagogue since the merger is positive and irrefutable. Among the witnesses called at the hearings were Dr. Solomon Grayzel, a trustee and one of America's leading Jewish scholars and historians, and Rabbi Marshall J. Maltzman, who was Rabbi at Congregation Beth El from 1957 to 1959, and has been Rabbi at Beth Hillel since 1961. In our opinion, the following extract from a statement made by Rabbi Maltzman, which is annexed to the record, best summarizes the religious practices being observed in the merged synagogue:

"Temple Beth Hillel-Beth El is perpetuating the terms of the Trust pertaining to a philosophy of Judaism as outlined by Mr. Rothschild. It is dedicated to the promotion and preservation of Conservative Judaism, a synonym for positive Historical Judaism, a philosophy advocated by Professor Solomon Schechter, President of the Jewish Theological Seminary of America, who was at the dedication of Congregation Beth El in 1913. This philosophy maintains a fidelity to the Law of Moses (Pentateuch), the ethical teachings of the Prophets and the Rabbinic interpretations of the Bible as incorporated in the Talmud. The ritual now in use at Temple Beth Hillel-Beth El is a continuation of the same ritual as when I served as Rabbi of Congregation Beth El. The liturgy, the Torah Reading and the chanting of the Haftorah (Prophetic portion) are performed in Hebrew.

"Men are required to have their heads covered while at worship. Temple Beth Hillel-Beth El em-

phasizes the observance of the Sabbath. The conduct of its Religious Services as well as its Religious School program are dedicated to the advancement of Conservative Judaism.

"Both the letter and spirit of the Trust Agreement have been faithfully preserved."

The auditing judge, therefore, finds as a fact that there has been no breach of the condition in paragraph 1 of the offer and that the religious beliefs, services and practices now being observed at the merged synagogue Temple Beth Hillel-Beth El are substantially the same as were previously in effect at Congregation Beth El and fully meet all of the requirements mandated by the settlor, Edward L. Rothschild. All of the parties in interest have indicated that they are in complete agreement with this conclusion.

Had our conclusion been otherwise, we would have been required to direct a reversion of the trust fund to the settlor's heirs because the cy pres doctrine would not apply.

When property is conveyed or devised upon a charitable trust for a specific purpose and it is provided that if the property is not used in the manner directed it shall revert to the settlor or his heirs, the trust is subject to a condition subsequent. If the condition is broken the settlor or his heirs are entitled to the property: Pruner Estate, 400 Pa. 629 (1960).

We will now address ourselves to the other conditions imposed by the settlor. These are principally that: (1) The Synagogue never encumber the land or buildings donated by the settlor; (2) the name Beth El be retained; (3) the synagogue building be a perpetual memorial to settlor's parents; (4) provisions be made for 100 free seats to worthy members of the Jewish community; and (5) the Synagogue site not be removed from West Philadelphia.

Section 809 of the Nonprofit Corporation Law of May 5, 1933, P. L. 289, as amended, 15 PS §7809, provides that:

"Upon the merger or consolidation becoming effective, the several corporations/parties to the plan of merger or consolidation shall be a single corporation . . . Any devise, bequest, gift or grant contained in any will or other instrument, in trust or otherwise, made· before or after such merger or consolidation, to or for any of the constituent corporations, shall inure to the surviving or new consolidated corporation, as the case may be."

In Bodine Trust, 429 Pa. 260, 263 (1968), the court said:

"We are of the opinion that consummation of a merger per se in no way affects or frustrates the charitable purposes of a trust fund and does not generate an event which would necessitate the application of cy pres . . .

"As indicated in 4 Scott, Trusts §397.3 (3d ed. 1967) and Restatement 2d, Trusts, §399, comment o (1959), the consolidated corporation or the surviving corporation as the case may be will be entitled to receive the trust funds as a matter of law, unless the settlor evidences a different intention . . ."

If it were not for the conditions set forth above, it is clear that Edward L. Rothschild's gift to Beth El would inure to the benefit of the merged corporation.

The present posture of Congregation Beth El is that it has merged with Temple Beth Hillel and the merged corporations are known as Temple Beth Hillel-Beth El; the religious services and other activities of the synagogue have been transferred from West Philadelphia to Wynnewood; and the physical plant at Fifty-eighth and Walnut Streets, which was extensively damaged by fire, has been sold to a religious group of another faith.

The trustee-accountants contend that the court should apply the cy pres doctrine and permit these deviations from settlor's clearly expressed directions. They suggest that the plan they propose best approximates settlor's intentions under the circumstances which have developed in the 58 years that have elapsed since the gift was consummated in 1915. We are favorably impressed with their position.

In 1915, West Philadelphia, and particularly the vicinity of Fifty-eighth and Walnut Streets, was a predominately Jewish community. Since then, the population of the area has changed completely and there remain very few Jewish residents, the others having moved to Northeast Philadelphia and the suburbs adjacent to the City. Most of the Jewish synagogues, community centers and social organizations in West Philadelphia have either closed or moved from the neighborhood.

Temple Beth Hillel-Beth El's physical plant is located on Lancaster Avenue several miles west of City Line, which is Philadelphia's western boundary, and just a few miles away from the old Beth El Synagogue. The total membership of Temple Beth Hillel-Beth El is approximately 1,200 adults, most of whom reside in the western section of Philadelphia or in the suburbs adjacent thereto. About 250 of them, including six of the nine trustees, were formerly members of Beth El. Approximately an additional 250 joined as a result of a previous merger in 1960 with the now closed West Philadelphia Jewish Community Center, a conservative synagogue, previously located in West Philadelphia at Sixty-third and Market Streets, which is about one mile from the old Beth El site. It is estimated that a majority of the other members of the merged synagogue were former residents of West Philadelphia who had moved to the western suburbs, and many others

were members of families which had once belonged to Beth El.

There can be no doubt, and the auditing judge finds as a fact, that it is wholly impractical and probably impossible to continue the operation of a Jewish synagogue at Fifty-eighth and Walnut Streets or any other place in West Philadelphia. Moreover, the limited funds on hand would make it completely impossible to build a new synagogue and school anywhere by reason of the tremendous increase in the cost of construction brought about by the inflationary trends which have engulfed our country, particularly in the building trades. In our opinion, the merger with Temple Beth Hillel and the move to the beautiful site in Wynnewood is an ideal solution to the problems caused by the migration of the Jewish community from West Philadelphia and the destruction of Beth El's physical plant by fire.

The only person who could possibly object to the plan submitted by the trustees would be the Attorney General of Pennsylvania as parens patriae (Wiegand v. Barnes Foundation, 374 Pa. 149 (1953)), and, perhaps, The First Pennsylvania Banking and Trust Company, as successor to the interest of Edward L. Rothschild, the settlor, by reason of the possibility of future reversion.

The Attorney General has issued a charitable clearance certificate and informed the court that it has no objection to approval of the trustee-accountant's request for permission to transfer the assets in their possession to the merged corporation.

Counsel for The First Pennsylvania Banking and Trust Company have stated to the court that they have no objection to the sale and conveyance of the synagogue property at Fifty-eighth and Walnut Streets and awarding the proceeds of the fire loss and the sale

of the buildings to Temple Beth Hillel-Beth El, the merged corporation. This approval is conditioned upon: (1) The merged corporation maintaining perpetually appropriate memorials for the Rothschilds at the Wynnewood site; and (2) the court in its adjudication reserving for the trustees of the Rothschild Memorial Synagogue and their successors, the right at any and all times hereafter to bring appropriate action in the event that any of the covenants and conditions of the said trust should be violated. They also request that the court direct that the merged corporation shall at all times refrain from encumbering its real estate without first petitioning this court for approval.

The auditing judge believes these are reasonable conditions under the circumstances in this case and appropriate directions to effectuate them will be incorporated herein.

Temple Beth Hillel-Beth El has agreed to establish the following memorials to Edward L. Rothschild and his family at the Wynnewood site:

"1. The name "ROTHSCHILD MEMORIAL" (the lettering 2¼″ high and the words having a total length of 45½″) will be cut into a white marble section to be set into the white stone exterior of the building, near the main entrance to the building (and the sanctuary) and immediately above the name of the synagogue which is similarly set.

"2. The designation, "ROTHSCHILD MEMORIAL SANCTUARY" will be placed in bronze lettering (1½″ high and 1/32″ thick) on the wooden wall of the religious sanctuary itself.

Note that by rule of the institution as well as the terms of the trust, no other designation of any memorial, dedication etc., is or will be permitted in the sanctuary.

"3. A bronze plaque will be erected in the school building which will appropriately and prominently designate the said building as a memorial to Lippman DeCasseres Rothschild, the son of the original settlor.

"4. Temple Beth Hillel-Beth El has (as per the merger agreement) already perpetuated Congregation Beth El's memorials to deceased members and their families, by placing the memorial tablets, together with similar tablets of former Temple Beth Hillel, on the walls of a small chapel in the premises which is separate and apart from the principal sanctuary. Such tablets will continue to be so perpetuated and will, of course, include the tablets inscribed with the names of settlor, his wife and son."

These arrangements have been approved by all parties in interest.

The auditing judge has been informed that Temple Beth Hiller-Beth El now provides 100 free seats to members of the Jewish Community.

On the question of encumbering the property of the merged synagogue, we direct that Temple Beth Hillel-Beth El shall not at any time hereafter mortgage the land that it now occupies or the buildings erected thereon, or to be erected hereafter, in an aggregate amount in excess of $350,000, without first obtaining the written approval of the Orphans' Court Division of the Court of Common Pleas of Philadelphia.

We further direct that the award herein to the merged synagogue be conditioned upon the payment of the balance due on a second mortgage dated August 30, 1972, held on the property owned by Temple Beth Hillel-Beth El by the Industrial Valley Bank and Trust Company in the original amount of $150,000. The balance of the sum so awarded which remains after satisfaction of that mortgage shall be available for the general purposes of the merged synagogue.

The present accountants and their successors shall continue to serve as trustees of the Rothschild Memorial Synagogue with the powers set forth in the deed of indenture, as modified by the directions in this adjudication.

Temple Beth Hillel-Beth El shall execute and deliver to Benjamin S. Loewenstein, I. Jerome Stern, Daniel C. Cohen, Mayer I. Blum, Jacob C. Gutman, Samuel A. Green, Solomon Grayzel, Albert M. Cohen and Benjamin Hoffman, Trustees of Rothschild Memorial Synagogue, and their successors in office, its bond, in a form to be approved by the auditing judge, in the amount of $350,000 to assure that the heirs and assigns of Edward L. Rothschild will receive the return of all funds paid to Temple Beth Hillel-Beth El pursuant to this adjudication in the event of a breach of the condition imposed by Edward L. Rothschild which would result in a reversion to them.

By letter dated January 30, 1973, Morton Craine withdrew his appearance for the accountant.

The account does not reflect the details of the sale of the land and buildings at Fifty-eighth and Walnut Streets. It shows a balance of principal of $304,784.79 and no income. Accountants are directed to transfer all trust assets in their possession to the merged synagogue, Temple Beth Hillel-Beth El, subject to the conditions set forth above.

A schedule of distribution, duly certified by counsel to be correct and in conformity with this adjudication, and approved by all parties in interest, shall within 90 days after the absolute confirmation of this account, be submitted to the auditing judge. The schedule, when approved and annexed hereto, will form part hereof.

And now, February 23, 1973, the account is confirmed nisi.