591 A.2d 755

The PSI UPSILON OF PHILADELPHIA and PSI
Upsilon Fraternity Tau Chapter, Appellants,

v.

The UNIVERSITY OF PENNSYLVANIA
and Kim M. Morrisson.

Superior Court of Pennsylvania.

Argued March 14, 1991.

Decided May 16, 1991.

Petition for Allowance of Appeal Denied
Sept. 25, 1991.

606

John F. Ledwith, Philadelphia, for appellants.

Frank A. Roth, Philadelphia, for appellees.

Before MONTEMURO, JOHNSON and HESTER, JJ.

MONTEMURO, Judge:

This appeal arises from an order of the Philadelphia Court of Common Pleas which denied appellants' request for a preliminary injunction. Appellants filed a complaint in equity seeking injunctive relief to enjoin appellees, the University of Pennsylvania and Kim M. Morrison, Vice Provost for University Life, from enforcing certain sanctions imposed by the University. Following the issuance of a temporary restraining order, a full evidentiary hearing was held and appellants' requested relief was denied. This appeal follows.

Psi Upsilon is a social fraternal organization, which at all times prior to May 1, 1990, was a recognized residential fraternity as defined by the University's Policy on Recognition and Governance of Undergraduate Social Fraternities and Sororities (the "Recognition Policy"). As a prerequisite to recognition as a fraternity on the University campus, appellants were required to enter into a written agreement with the University binding them to the principles, obligations and responsibilities set forth in the Recognition Policy.[1]

The basis of appellants' contentions on appeal arises from an incident that occurred on or about January 20, 1990. On that date, approximately twenty (20) officers, members and pledges of Psi Upsilon participated in the kidnapping and terrorizing of William O'Flanagan, Jr. ("O'Flanagan"), an undergraduate who was not a member of Psi Upsilon, as

1. Appellants had participated in the drafting of this policy.

part of the "hazing" process.[2] Immediately following the kidnapping, the facts of which are not in dispute in the instant appeal, O'Flanagan filed a complaint with the University's Department of Public Safety.[3] Following a hearing, sanctions were imposed from which appellants unsuccessfully sought injunctive relief. This appeal followed.

In reviewing a challenge to the denial of a preliminary injunction,

"... appellant has a very heavy burden to overcome; such a decree will not be interfered with upon appellate review in the absence of a plain abuse of discretion by the court below." *Safeguard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 577–78, 345 A.2d 664, 670 (1975). (citations omitted). "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the Chancellor." *Roberts v. Board of Directors of the School District of Scranton,* 462 Pa. 464, 469, 341 A.2d 475, 478 (1975); (citations omitted).

*Boehm v. University of Pennsylvania School of Veterinary Medicine,* 392 Pa.Super. 502, 505–506, 573 A.2d 575, 577 (1990). In order to prevail on a petition for injunctive relief, the moving party must establish that:

1) it is necessary to prevent immediate and irreparable harm not compensable in damages;

2) greater harm would result from denying it than from granting it;

3) the right to it is clear; *and,*

4) the status quo would be restored if it was granted.

*Schulman v. Franklin & Marshall College,* 371 Pa.Super. 345, 352, 538 A.2d 49, 52 (1988), *citing Pennsylvania Interscholastic Athletic Association, Inc. v. Greater Johnstown*

**2.** Apparently, O'Flanagan was not the intended victim, and had been abducted by mistake.

**3.** O'Flanagan also filed a criminal complaint with the Philadelphia Police Department and the Philadelphia District Attorney's Office against several members of Psi Upsilon.

*School District* 76 Pa.Commw. 65, 71–72, 463 A.2d 1198, 1201 (1983), (citations omitted) (emphasis added).

Appellants assert that all prerequisites for injunctive relief were met. In support, they place special emphasis on the "clear right to relief", which they contend exists by virtue of the University's denial of their due process right to a fair and impartial hearing, and its denial of their rights of association, assembly and free speech. We find these assertions without merit.

■ Appellants initially argue that the University's Fraternity & Sorority Advisory Board (F.S.A.B.) hearing did not comport with minimum standards of due process. In the university context due process is defined according to whether the institution is public or private. As stated in *Boehm, supra,* the law is fairly well established that in a state owned college or university, due process requires notice and some opportunity for hearing before a student is disciplined. *Boehm, supra,* 392 Pa.Super. at 508, 573 A.2d at 578, *citing Dixon v. Alabama State Board of Education,* 294 F.2d 150 (5th Cir.1961), *cert. den.* 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961). However,

> [t]he law pertaining to judicial review of disciplinary proceedings at private colleges and universities is not so well settled. Generally, it has been said that courts are more reluctant to interfere in the disciplinary proceedings of a private college than those of a public college. (citations omitted.) A majority of the courts have *characterized the relationship between a private college and its students as contractual in nature.* Therefore, *students who are being disciplined are entitled only to those procedural safeguards which the school specifically provides.*

*Id.,* 392 Pa.Super. at 509–10, 573 A.2d at 579, (emphasis added) (citations omitted).

The only caveat applied to this principle is that the disciplinary procedures established by the institution must

be fundamentally fair.[4] *Id.*

In *Boehm* itself, this court found that basic principles of due process and fundamental fairness were adhered to where the students involved, who were accused of cheating, had been given notice of the charges and evidence against them, were allowed to be present and to participate in the hearing assisted by faculty, to call their own witnesses and to cross-examine the witnesses against them, and were fully apprised of the findings of the Hearing Panel. The parallel with the instant case is inescapable.

■ Herein, in accordance with the F.S.A.B. Charter, contained in the University's Policies and Procedures manual, Patricia Phaup, Director of the Office of Fraternity and Sorority Affairs, and Constance Goodman, University Judicial Inquiry Officer, initiated an investigation, pursuant to which a detailed statement of charges and violations was presented to appellants. The statement contained the date, time and place for the hearing.

On April 11, 1990, a full evidentiary hearing was conducted before the F.S.A.B., a body comprised of: a Chairperson, two (2) faculty members, two (2) fraternity/sorority alumni representatives, two (2) university fraternity/sorority student members and one (1) non-fraternity/sorority student. At the hearing, appellants, represented by legal counsel[5], were afforded the opportunity to present evidence, although they chose not to do so owing to the pendency of criminal charges against several members. However, appellants did cross-examine all witnesses presented by the University. At the end of presentation of evidence, both Psi Upsilon and University participants gave closing arguments.

The Board substantially adopted the findings presented, and sanctions were recommended. These findings and recommendations were then submitted to Dr. Morrisson who accepted them with minor modifications. All materials were thereafter sent to appellants, including the proposed

4. It has never been claimed that the University is a state actor.
5. The University had no counsel present, nor did O'Flanagan.

sanctions, which included: withdrawal of recognition of Psi Upsilon as a fraternal organization for three (3) years with no automatic right of return; dispossession from the Psi Upsilon house without compensation; and, the prohibition of any member or pledge of Psi Upsilon, Tau Chapter, as of January 20, 1990, from participation in any future application process. Based upon the above proceedings, we cannot find that Psi Upsilon was denied either notice or an opportunity to be heard. Psi Upsilon, however, raises several objections to the procedures as contained in the F.S.A.B. Judicial Charter.[6]

Initially, appellants question whether they received adequate notice of the charges pending against them. They contend that they were provided with "mere[ ] recitations of alleged acts, which in the aggregate were found to be a violation of the Tau Chapter's "collective responsibility." (Appellant's Brief at 11). It is contended that because the term "collective responsibility", contained in the statement of charges and violations is both vague and overbroad, and because no one testifying at the hearing provided an adequate definition, appellants were deprived of adequate notice. A review of the Recognition Policy, as well as the witnesses who offered definitions of "collective responsibility" reveals no support for appellants' claim.

The contractual provision, entered into by Psi Upsilon pursuant to the Recognition Policy and Annual Affirmation of Recognition Policy by Recognized Fraternity, states,

6. Appellants argument of constitution infringement is based mainly on *Alpha Tau Omega Fraternity v. University of Pennsylvania,* 10 Phila. 149, 165 (1983). There the court was called upon to determine whether the Alpha Tau Omega fraternity was afforded minimal due process in a disciplinary hearing conducted by the F.S.A.B. in 1983, which at that time had no set procedures for disciplinary hearings conducted against a fraternity or sorority on the University of Pennsylvania campus. The court suggested a list of procedures followed in other jurisdictions in order to afford Alpha Tau Omega minimal due process. Despite appellants insistence to the contrary, the only item suggested by the *Alpha Tau Omega* court not followed in this case, was preparation of a hearing transcript, an omission appellants also contend deprived them of a fair hearing. We are not bound by the trial court's decision.

**A. Obligations of the Fraternity/Sorority to the University**

By undertaking the process of recognition, the fraternity or sorority assumes certain obligations and responsibilities to the University community: ...

2. *To accept collective responsibility for the activities of individual members of the undergraduate chapter as they relate to the following:* ...

   b. *Conduct* of members and conduct of guests of members *which is knowingly tolerated by the members of the fraternity and is in violation of the University's Code of Conduct;* ...

*See Penn,* "University Policies and Procedures 1989–1991", p. 32 (emphasis added). After reviewing the plain meaning of the language as espoused in the above contractual provision, and the statement of charges, we find the complained of provision to be neither ambiguous nor vague or overbroad, and that appellants were not denied effective notice. *See Rosen v. Empire Valve and Fitting, Inc.,* 381 Pa.Super. 348, 553 A.2d 1004 (1989) (Court should not give agreement construction which is in conflict with plain meaning of language used.)

Appellants' argument that the definitions provided by the hearing witnesses were inconsistent is similarly unwarranted. Given the consonance between the contract and the testimony, as well as appellants' involvement in the original drafting of the language defining the term, appellants were in no way deprived of notice as to the charges against them. The absence of any complaint in this regard during either the Board hearing or the court hearing makes their lack of confusion quite clear.

■ Appellants also contend that they were denied a fair opportunity to be heard due to the fact that certain members, against whom criminal charges were pending, invoked their privilege against self-incrimination at the hearing before the F.S.A.B. They state that this exercise of privilege deprived them of the opportunity to present evidence, and that the University's failure to postpone the hearing until

after resolution of the criminal proceedings effectively denied them due process. We find this contention to be without merit.

As stated by the United States Court of Appeals for the Third Circuit,

> ... the contention that an actual or potential defendant in a criminal case should not even be put to the difficult choice of having to assert the privilege in a related civil case was rejected in United States v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 [1970] ...
>
> Such a witness must either invoke his privilege against self-incrimination, or assume "the general duty to give what testimony one is capable of giving."

De Vita v. Sills, 422 F.2d 1172, 1178–79 (3rd Cir.1970), citing United States v. Simon 373 F.2d 649, 653 (2nd Cir.1967), cert. gr. Simon v. Wharton, 386 U.S. 1030, 87 S.Ct. 1485, 18 L.Ed.2d 591, vacated as moot, 389 U.S. 425, 88 S.Ct. 577, 19 L.Ed.2d 653 (1967), (citation omitted). See also, Herberg v. Com., State Bd. of Medical Ed., 65 Pa. Commw. 358, 442 A.2d 411 (1982), citing Arthurs v. Stern, 560 F.2d 477, 480 (1st Cir.1977) ("[T]here is [nothing] inherently repugnant to due process in requiring the doctor to choose between giving testimony at the disciplinary hearing, a course that may help the criminal prosecutors, and keeping silent, a course that may lead to the loss of his license.") We find, as did the federal court in Gabrilowitz v. Newman, 582 F.2d 100, 104 (1st Cir.1978), that the difficulty of the choice facing appellants did not render it of constitutional proportions. Due process simply is not implicated by the arduousness of the decision.

Appellants also assert that bias on the part of the F.S.A.B. members prevented a fair and impartial hearing. Specifically, it is asserted that Ms. Phaup acted as both an investigator and a deliberator concerning the charges against Psi Upsilon, that Lisa Gross, a university sorority member sitting on the Board, was biased because of her acquaintance with the victim, O'Flanagan, and that Dr. Morrisson, the final decision maker, was biased as she was

a Co–Chair–person for a Committee to Diversify Locust Walk, the lane upon which Psi Upsilon's Charter House was located.

■ We first point out that the Board is not subject to strict rules of judicial procedure. Moreover, as this Court has stated previously, courts should not interfere with internal procedure and discipline unless real prejudice, bias or denial of due process is present. *See Boehm, supra,* 392 Pa.Super. at 514, 573 A.2d at 581, *citing Schulman v. Franklin and Marshall College, supra,* 371 Pa.Super. at 351, 538 A.2d at 52. In each of the instances cited, appellants' claim of unfairness is unsupported by the record: Mrs. Phaup did in fact make initial inquiries about the incident, but was not a voting member of the Board; Dr. Morrisson merely approved the Board's conclusions; Ms. Gross, the putative acquaintance of the victim, O'Flanagan, knew him only by sight. We find in none of these circumstances sufficient prejudice to vitiate due process.

■ The same holds true with appellant's assertion that the University considered undisclosed evidence in making its determinations. Psi Upsilon states that Mr. Sluizer, a fraternity alumni representative on the Board, spoke with attorney friends after the hearing but before deliberations. They further allege that a typewritten statement made by Brian Hanstein, a witness, was "pilfered" from Mr. Hanstein's portfolio and utilized by the Board during deliberation. Finally, they assert that Ms. Goodman's charges concerning the "planning stages" of the incident against O'Flanagan were not presented at the hearing but were utilized by the Board during deliberations. Based upon the above, they conclude that they were denied a fair hearing. Such an assertion is incorrect. This evidence was presented to the trial judge who, as factfinder, could believe some, all or none of the proffered testimony. As there is nothing in the trial court's decision to indicate that he found this argument credible, we will not assume the role of factfinder to conclude otherwise.

■ Appellant's final fairness assertion is that the sanctions imposed were too severe in light of prior disciplinary measures taken against other fraternities. Initially, an assertion that sanctions are too severe does not establish a basis for relief in Pennsylvania courts, as such a determination is within the sole province of that person designated within the contractual agreement to which the parties are signatory. *Boehm, supra,* 392 Pa.Super. at 521, 573 A.2d at 585. The F.S.A.B. and Vice Provost, Dr. Morrisson, fully considered all evidence presented and incorporated findings of fact and conclusions supported by law. As the determinations were within the sole province of the F.S.A.B. and Vice Provost, pursuant to the Recognition Policy and Fraternity/Sorority Advisory Judicial Charter, signed by Psi Upsilon, we will not disturb their decision.[7]

■ We next approach appellants' related assertion that by imposing sanctions under a theory of "collective responsibility," the University has abridged their constitutional rights of association, assembly and free speech, thus entitling them to injunctive relief.

In addressing this claim, we return to the premise that the University is a private institution, maintaining private property.

"Even when an owner of private property is constitutionally obligated to honor speech and assembly rights of others, private property rights themselves must nonetheless be protected. *The owner of such private property, therefore, is entitled to fashion reasonable rules to control the mode, opportunity and site for the individual exercise of expressional rights upon his property.* (footnote omitted) *It is at this level of analysis—assessing the reasonableness of such restrictions—that weight may be given to whether there exist convenient and feasible alternative means to individuals to engage in substantially the same expressional activity.*"

7. We note that no disciplinary measures were imposed upon individuals during these proceedings. No member was expelled, suspended from classes, or suffered alteration of his student status in any way.

*Commonwealth v. Tate,* 495 Pa. 158, 174, 432 A.2d 1382, 1390 (1981), *citing State v. Schmid,* 84 N.J. 535, 563, 423 A.2d 615, 630 (1980) (emphasis added) (footnote omitted).

The Recognition Policy to which appellant was signatory establishes the responsibility of the fraternity as an entity for acts of its members which have been determined to be improper. The result of such a conclusion is not appellants' inability to function as the social organization it, in fact, is, but only its inability to function under the auspices of that institution whose rules its members have broken. No limitations have been placed upon its continued operation outside the University. As its "right" to University recognition was contingent upon the compliance of all its members to the rules posited by the Recognition Policy, it no longer possesses this "right." However, its essential nature is unaffected by the sanctions.

Appellants finally argue that not only have they complied with the "clear right to relief" prerequisite for injunctive relief, but they have also complied with all other prerequisites.

Pursuant to our determination that Psi Upsilon has not met the prerequisite of establishing a "clear right to relief", we need not address their remaining arguments in support of injunctive relief. *See Schulman v. Franklin and Marshall College, supra,* 371 Pa.Super. at 352, 538 A.2d at 52 (A preliminary injunction is an extraordinary remedy *available only where the party seeking it establishes all four (4) prerequisites.*) *See also Pennsylvania Interscholastic Athletic Association, Inc. v. Greater Johnstown School District,* 76 Pa.Commw. 65, 463 A.2d 1198 (1983); *Independent State Store Union v. Pennsylvania Liquor Control Board* 495 Pa. 145, 432 A.2d 1375 (1981).

Order affirmed.