661 A.2d 889

**In re The BARNES FOUNDATION, a Corporation.**

**Appeal of Nicholas TINARI.**

**In re The BARNES FOUNDATION, a Corporation.**

**Appeal of STUDENTS OF the Barnes Foundation.**

**In re The BARNES FOUNDATION, a Corporation.**

**Appeal of STUDENTS OF the BARNES FOUNDATION.**

Superior Court of Pennsylvania.

Argued March 29, 1995.

Filed July 10, 1995.

Arthur L. Jenkins, Jr., Norristown, for appellants.

Lynn R. Rauch & Sheryl L. Auerbach, Philadelphia, for trustees of the Barnes Foundation, participating parties.

Before TAMILIA, HOFFMAN and CERCONE, JJ.

TAMILIA, Judge:

These consolidated appeals [1] involve several issues concerning the administration of the Barnes Foundation (hereinafter "the Foundation"), a public charity possessing an extremely valuable art collection and dedicated to education in the fine arts.

## NO. 02085 PHILADELPHIA, 1993

Appellant, Nicholas Tinari, appeals from the May 20, 1993 Decree granting the Petition to Dismiss Petition to Rescind his "Expulsion" and dismissing his Petition to Rescind his "Expulsion" from the Foundation. The Montgomery County

---

1. In the interest of judicial economy, these appeals were consolidated for purposes of oral argument and our resolution of this litigation.

Orphans' Court entered the Decree on the basis that it lacked jurisdiction over the controversy.

The record, as relevant to the first appeal, establishes that appellant, a student and trustee *ad litem* [2] of the Foundation, was suspended from course and visitation privileges at the Foundation for a period totalling three years. Appellant was first suspended on January 13, 1992 for a period of one year after repeatedly photographing and accosting visitors and scholars of the Foundation. He was suspended for an additional two-year period on June 11, 1992 after impersonating a Foundation employee on three occasions in order to gain access to the Foundation's premises. [3]

The determination of the Orphans' Court that it lacked jurisdiction over appellant's petition was based on its belief that "the court had become embroiled in a matter in which it had no business." [4] In support of this conclusion, the court relied exclusively on *Barker v. Bryn Mawr College*, 278 Pa. 121, 122 A. 220 (1923). Both parties agree, as they must, that *Barker* stands for the proposition that a court of common pleas "does not have jurisdiction to issue a writ of mandamus to compel [appellant's] reinstatement" [5] in a private institution.

Appellee agrees with the finding of the trial court and argues that, by seeking reinstatement in the Foundation, appellant is "effectively seeking the issuance of a writ of mandamus." [6] Thus, reasons appellee, the authority of *Barker* clearly prohibits the assumption of jurisdiction over appellant's petition. Appellee also directs our attention to *Strank v. Mercy Hospital of Johnstown*, 376 Pa. 305, 102 A.2d 170

2. In a proceeding unrelated to the present appeal, appellant and two other students were appointed trustees *ad litem* to represent the interests of the current and future students of the Barnes Foundation. On August 5, 1992, the other two students resigned as trustees *ad litem*.

3. Although appellant's suspensions would have terminated on January 13, 1995, rendering his appeal moot, we will address appellant's claim in order to avoid a recurrence of this litigation.

4. Slip Op., Stefan, J., 5/20/93, p. 2.

5. *Barker v. Bryn Mawr College*, 278 Pa. 121, 122, 122 A. 220, 221 (1923).

6. Appellee's brief at 8.

(1954), which, finding *Barker* "a case practically identical with the instant one," [7] dismissed an action by a student of a private nursing school to compel a transfer of credits. Invoking *Barker*, the court concluded that it lacked jurisdiction over appellant's mandamus action because of the contractual nature of the parties' relationship.

On the other hand, appellant would have us find that "the *Barker* decision has not been the law of the Commonwealth of Pennsylvania since 1954." [8] Appellant then cites *Strank, supra*, the identical case cited by appellee as endorsing *Barker*, for the proposition that *Barker* is no longer viable. The seemingly diametric opposition of these two positions is easily reconciled because, as neither party recognizes, there are two Supreme Court *Strank* decisions. It is the difference between these two cases which compels us to reject the arguments of both appellant and appellee.

*Strank I*, the case cited by both parties, was a mandamus action wherein, as noted above, the court refused jurisdiction on the basis that the relationship between a student and a private institution is purely contractual. Therefore, the court concluded, since mandamus actions are limited to rights and duties imposed by law, jurisdiction will not lie where a mandamus action is predicated upon a private contract.

*Strank v. Mercy Hospital of Johnstown*, 383 Pa. 54, 117 A.2d 697 (1955) (*Strank II*), the case appellant presumably relies on as undermining *Barker*, involved a suit in equity brought by the same parties and on the identical issue as *Strank I*. The Court, distinguishing the mandamus action of *Strank I*, allowed the relief sought because the present action sounded in equity. Therefore, as *Strank II* did not deal with mandamus actions, appellant is flatly wrong in his contention that it overruled *Barker*. Indeed, the continuing validity of *Barker* has been expressly recognized by this Court as recent-

7. *Strank v. Mercy Hospital of Johnstown*, 376 Pa. 305, 310, 102 A.2d 170, 172 (1954).

8. Appellant's brief at 10.

374

ly as 1990.[9]

■ The flaw in appellee's argument on appeal lies in the assumption that appellant's petition requests mandamus. The trial court, by relying on *Barker*, also apparently believed that appellant's petition prayed for a writ of mandamus. A fair reading of the petition, however, leads equally to the conclusion that it is addressed to the extensive equity powers of Orphans' Court.[10] If, in fact, the petition is construed as sounding in equity, there can be no doubt that jurisdiction attaches.[11] Indeed, as stated by the Supreme Court in *Strank II*:

9. *See Boehm v. U. of Pa. School of Veterinary Medicine*, 392 Pa.Super. 502, 573 A.2d 575 (1990).

10. For discussions of the inherent equity powers of Orphans' Court, *see In re Estate of Pedrick*, 505 Pa. 530, 482 A.2d 215 (1984); *In re Gerlach's Estate*, 364 Pa. 207, 72 A.2d 271 (1950).

11. We also note Judge Cercone's conclusion, in his Concurring Opinion, that appellant's petition does, in fact, request relief in mandamus and not in equity. In support of this conclusion, Judge Cercone states, "neither [appellant] nor the majority sets forth how [appellant] has suffered damages which cannot be remedied at law." However, it is precisely this omission which forecloses the possibility of reading appellant's petition as sounding in mandamus. Mandamus is an "extraordinary remedy," *Commonwealth v. Blystone*, 421 Pa.Super. 167, 617 A.2d 778 (1992), which lies only where "the absence of any other adequate remedy at law ... is properly pleaded," *County of Allegheny v. Com.*, 507 Pa. 360, 490 A.2d 402 (1985). *See also* Pa.R.C.P. 1095(6) ("The plaintiff shall set forth in the [mandamus] complaint ... (6) the want of any other adequate remedy at law"). Thus, appellant's petition cannot request mandamus relief and we decline to assume that it can merely in order to then dismiss it as fatally defective. Further, a mandamus complaint is addressed to a court of law, *City of Pittsburgh v. Pa.*, 490 Pa. 264, 416 A.2d 461 (1980), whereas an Orphans' Court "is [a] court in equity within [the] limited sphere of its operations." *In re Burr's Estate*, 381 Pa. 547, 113 A.2d 712 (1955); *see also In re Estate of Pedrick*, 505 Pa. 530, 482 A.2d 215 (1984). Therefore, as appellant's petition was filed in Orphans' Court without further guidance as to the source of relief requested, we restate our belief that the petition sounded in equity. The cases relied on by Judge Cercone for the proposition that appellant's petition requested mandamus relief, *Strank I* and *Barker*, were, as noted above, actions at law and are therefore inapposite. Finally, we note that numerous courts have assumed jurisdiction over claims similar to that presented by appellant herein. *See e.g., Psi Upsilon v. U. of Pa.*, 404 Pa.Super. 604, 591 A.2d 755 (1991); *Boehm, supra; Schulman v. Franklin and Marshall College*, 371 Pa.Super. 345, 538 A.2d 49 (1988); *Strank II, supra*.

There is not the slightest merit in defendant's contention that the court in equity was without jurisdiction to enter upon these proceedings; indeed the case is one peculiarly for determination by such a court.... [I]t is the peculiar province of equity to afford relief where the measurement of damages in such cases cannot be formulated and applied in a suit at law because of their being necessarily speculative and indeterminate, and therefore the legal remedy is not adequate and complete.... Indeed it might be said that it would be a reproach to our system of jurisprudence if plaintiff should be found entitled to the transfer credits which she seeks, but nevertheless neither law nor equity can furnish her any adequate means of redress.

*Id.* 383 Pa. at 55, 117 A.2d at 698.

Thus, the issue becomes not whether the court has jurisdiction of the petition, because it surely does, but whether it chooses to intervene in the relationship between a student and a private institution.

As this Court has noted in declining to preliminarily enjoin a student's suspension from a private college:

The courts have been very reluctant to interfere with college proceedings concerning internal discipline. *A college is a unique institution which, to the degree possible, must be self-governing and the courts should not become involved in that process unless the process has been found to be biased, prejudicial or lacking in due process....* From the days of the Medici's, who created the colleges in Florence during the Renaissance, to modern times, colleges have been unique in their insulation from state taxation controls and their self-government.

*Schulman v. Franklin & Marshall College,* 371 Pa.Super. 345, 348, 538 A.2d 49, 52 (1988); *see also Boehm v. U. of Pa. School of Veterinary Medicine,* 392 Pa.Super. 502, 573 A.2d 575, 579 (1990) ("the courts are more reluctant to interfere in the disciplinary proceedings of a private college than those of a public college"). We find the *Schulman* rationale, as reiterat-

ed by *Boehm*, applicable to the private educational mission of the Foundation.

■   The suspension of appellant was deemed necessary to protect the Foundation's invitees from appellant's repeated harassment and to protect the property of the Foundation from appellant's repeated unauthorized entries. Particularly in light of the unique and priceless art maintained on the premises, we recognize the great discretion retained by the Foundation in exercising control over those permitted in its gallery and educational facilities. This discretion, when exercised in a reasonable manner, will not be subverted by the courts. *Schulman, supra.*

■   Thus, while we note that the authority relied on by the Orphans' Court does not aid our resolution of the present case, we agree with the court's conclusion that the judiciary has no business second-guessing the Foundation's reasonable suspension of appellant.[12]   On appeal, our Court will affirm a trial court's Order if it is correct on any legal ground or theory, regardless of the reason or theory relied on below. *Estate of Mackarus*, 431 Pa. 585, 596, 246 A.2d 661, 667 (1968) ("[i]f there is any basis for the Orphans' Court's decision, the decision must stand"); *Al Hamilton Contracting Co. v. Cowder*, 434 Pa.Super. 491, 644 A.2d 188 (1994); *Strickler v. Huffine*, 421 Pa.Super. 463, 618 A.2d 430 (1992), *appeal denied*, 536 Pa. 630, 637 A.2d 290 (1994).

**12.**  Appellant also makes the completely unsupported allegation that "[c]learly, the expulsion without being afforded even the crudest of due process rights offends Pennsylvania law." (Appellant's brief at 11.) Since appellant cites absolutely no authority in support of his claim, and did not raise it below during the complete hearing on the merits of appellant's suspension, we find the issue waived. "We decline to become substitute counsel for appellant", *Commonwealth v. Rodgers*, 413 Pa.Super. 498, 520, 605 A.2d 1228, 1239 (1992), and we will deem an issue abandoned where it has been identified on appeal but not properly developed in appellant's brief. *Id.; Commonwealth v. Nelson*, 389 Pa.Super. 417, 422–23, 567 A.2d 673, 676 (1989), *allocatur denied*, 527 Pa. 623, 592 A.2d 44 (1990). Additionally, we are aware of no Pennsylvania authority applying the traditional requisites of due process to a private, non-accredited educational institution.

## NO. 00794 PHILADELPHIA, 1994

This appeal from the Decree of February 1, 1994 permitting the Trustees of the Barnes Foundation to add The Kimbell Art Museum and the Art Gallery of Ontario as additional venues to the tour authorized July 21, 1992 was quashed by this Court on March 8, 1995. The petition for reargument, reconsideration and reinstatement of the appeal was denied on March 28, 1995.

## NO. 02605 PHILADELPHIA, 1994

Appellant, proceeding as the students' appointed trustees ad litem,[13] next contends that the Orphans' Court abused its discretion in dismissing his petition to enjoin construction and capital improvements proposed by the trustees of the Foundation. The court below denied the petition, sua sponte, on the basis that appellant had exceeded the scope of his appointment as trustee ad litem and was presently engaging in "frivolous and harassing" litigation.[14] On appeal, appellant chooses not to address the standing issue, instead asserting as error the court's failure to hold a hearing on the merits of the petition to enjoin.

■ However, before a court can proceed to address the merits of a controversy, it must determine whether standing exists to maintain the action. *Nye v. Erie Ins. Exchange,* 504 Pa. 3, 470 A.2d 98 (1983), *appeal after remand,* 349 Pa.Super. 490, 503 A.2d 954 (1986).

Our Supreme Court has long held that standing requires a substantial, direct and immediate interest in the subject matter of the litigation. *Wm. Penn Parking Garage v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975). The three requisites to standing have been defined as follows:

13. As noted, supra, the other two students appointed with Nicholas Tinari as trustees ad litem withdrew on August 5, 1992 and have not participated in this appeal. Thus, despite the fact that Tinari has proceeded in the name of all three students as trustees ad litem, we will regard Tinari as the sole appellant.

14. Slip Op., Stefan, J., 6/22/94. As the court found that appellant was never permitted to intervene in the instant litigation, the dismissal was premised on the absence of standing.

A "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. A "direct" interest requires a showing that the matter complained of caused harm to the party's interest. An "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it, and is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or constitutional guarantee in question.

*South Whitehall Twp. Police Service v. South Whitehall Twp.*, 521 Pa. 82, 86–87, 555 A.2d 793, 795 (1988) (citations omitted).

This is not the first time the question of standing, with specific regard to the Barnes Foundation, has been addressed by the courts of this state. Our Supreme Court, in *Wiegand v. Barnes Foundation*, 374 Pa. 149, 97 A.2d 81 (1953), confronted a claim by a citizen and newspaper editorial writer that the Foundation's rules, as administered by the Board of Trustees, so limited public access that the charitable purpose of the Foundation was effectively defeated. The *Wiegand* Court, in affirming the dismissal of plaintiff's action for lack of standing, concluded:

In the absence of statutory authority, no person whose interest is only that held in common with other members of the public, can compel the performance of a duty owed by the corporation to the public. Only a member of the corporation itself or someone having a special interest therein or the Commonwealth, acting through the Attorney General, is qualified to bring an action of such nature.... The protection of the public generally against the failure of a corporation to perform the duties required by its charter is the concern of the sovereign, and any action undertaken for such purpose must be by the Attorney General on its behalf.

*Id.* at 150–51, 153–55, 97 A.2d at 81, 82–83.

Since appellant herein also challenges actions of the board of trustees as violative of the trust indenture, *Wiegand* com-

pels dismissal of the petition to enjoin unless appellant possesses some "special interest" in the present litigation.[15] Thus, the specific question before us is whether appellant's status as trustee *ad litem* and one-time student confers standing where none would otherwise exist.

On June 24, 1991, the students sought to intervene into the attempt of the Foundation's Board of Trustees to amend the trust indenture. The students' petition to intervene, which was granted by Order of July 30, 1991, expressed the intention of the students as follows:

> Your Petitioners desire to provide the Court with facts about the educational process and curriculum of the Foundation's Art Department from the perspective of current and future students and the impact that the Trustees' proposed amendments will have on the educational purposes of the Barnes Foundation, on themselves and on future students.

Petition to Intervene, 6/24/91.

The Orphans' Court, in dismissing appellant's petition to enjoin, found:

> The Court originally allowed the Students to intervene in the within action for the very limited purpose of providing the Court with facts about the educational process and curriculum of the Foundation's Art Department from the perspective of current and future students. Unfortunately, the "Students" have used this wedge to engage in what must be described as frivolous and harassing conduct which has done nothing but run up attorneys' fees for the Foundation.

Slip Op., Stefan, J., 8/9/94, p. 1.

■ As this finding issued from the same court which granted the petition to intervene, we find it particularly insightful on the permissible scope of intervention. Moreover, we agree with the court that initiating litigation to enjoin actions of the trustees clearly exceeded the permission, as

15. The Attorney General declined to participate in appellant's attempt to enjoin the proposed construction.

requested by the students and as granted by the court, to provide facts concerning the impact of those actions.

■   Additionally, even the limited permission to intervene was based on appellant's status as a student, a status terminated by appellant's suspensions of January 13 and June 11, 1992.   Thus, at all times relevant to appellant's petition to enjoin, appellant was not a student of the Barnes Foundation. He could not, therefore, represent current and future students of the Foundation, as contemplated by the petition to intervene.

In sum, appellant's status as trustee *ad litem* did not extend to his initiation of the present action, and since appellant was not a student of the Foundation at any point during the pendency of this litigation, he held no status greater than that of the common citizenry.   *South Whitehall Twp. Police Service: Wiegand, supra.*   The Orphans' Court was therefore correct in holding that appellant lacked standing to assert his petition to enjoin.

Even assuming the existence of standing, appellant's petition to enjoin must fail.   The heart of appellant's petition, paragraph 4, provides:

4.   Your petitioners are advised and therefore aver that in derogation of the Trust Indenture and By–Laws the Trustees:

   (a) intend to erect parking lots or parking facilities contrary to the Trust Indenture;

   (b) intend to erect a permanent building known as a guard house or security house in derogation of the Trust Indenture;

   (c) intend to diminish the size of the arboretum contrary to the Trust Indenture;

   (d) intend to expand the facilities of the Barnes Foundation in order to accommodate society functions prohibited by the Trust Indenture;

(e) in other ways violate the Trust Indenture by construction and capital improvements presently unknown to your petitioners.

Appellant's brief at 9–10.

Pennsylvania Rule of Civil Procedure 1019(a) requires that "(a) The material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Pennsylvania Orphans' Court Rule 3.4 provides that "(a) A petition shall set forth ... (3) a concise statement of the facts relied upon to justify the relief desired, together with the citation of any Act of Assembly relied upon...."

■ It is Hornbook law that only well-pleaded facts are accepted as true when determining a demurrer. *See e.g., Jackson v. SEPTA,* 129 Pa.Cmwlth. 596, 566 A.2d 638 (1989), *appeal denied,* 527 Pa. 656, 593 A.2d 426 (1990). Further, "[a pleading] should formulate the issues by fully summarizing the material facts", *General State Authority v. The Sutter Corp.,* 24 Pa.Cmwlth. 391, 395, 356 A.2d 377, 381 (1976), and "[a]s a minimum, a pleader must set forth concisely the facts upon which his cause of action is based", *Line Lexington Lumber–Millwork Co., Inc. v. Pennsylvania Publishing Co.,* 451 Pa. 154, 162, 301 A.2d 684, 688 (1973).

■ The Orphans' Court concluded that appellant's petition was an insufficient basis upon which to enjoin the proposed construction. "The lower court has broad discretion in determining the amount of detail that must be averred since the standard of pleading set forth in Rule 1019(a) is incapable of precise measurement." *Pike County Hotels Corp. v. Kiefer,* 262 Pa.Super. 126, 134, 396 A.2d 677, 681 (1978), *citing* Goodrich–Amram § 1019(2)–10 a 11. We will not disturb the Orphans' Court determination that appellant's "advice and averments" are a legally insufficient basis upon which to award relief.

The Decree at No. 02085 Philadelphia, 1993, is affirmed.

The appeal from the Decree at No. 00794 Philadelphia, 1994, is dismissed.

The Order at No. 02605 Philadelphia, 1994, is affirmed. Jurisdiction relinquished.

CERCONE, J., files a concurring opinion.

CERCONE, Judge, concurring.

Although the majority issues an insightful resolution of the issues raised in the appeal brought at No. 2605 Philadelphia, 1994, I am somewhat perplexed with the majority's characterization of appellant Tinari's petition to rescind his expulsion as a complaint in equity.

Appellant Tinari filed before the Orphans' Court of Montgomery County a pleading entitled "PETITION OF NICHOLAS TINARI, JANET CUSACK, AND DOLORES LOMBARDI FOR AN ORDER DIRECTING THE TRUSTEES OF THE BARNES FOUNDATION TO RESCIND THE EXPULSION OF NICHOLAS TINARI, TRUSTEE AD LITEM." In the petition, appellant requests "that the Court enter an order directing that the trustees of The Barnes Foundation rescind the notice of January 19, 1992 and permit Nicholas Tinari to continue his studies and his visits to the Gallery and Arboretum." The majority states that "[a] fair reading of the petition ... leads equally to the conclusion that it is addressed to the extensive equity powers of Orphans' Court." Slip Opinion at 5. However, a "fair reading" of the Supreme Court's holdings in *Barker v. Bryn Mawr College*, 278 Pa. 121, 122 A. 220 (1923), and *Strank v. Mercy Hospital of Johnstown*, 376 Pa. 305, 102 A.2d 170 (1954) (*Strank I*), would clearly indicate that Tinari's petition sounds in mandamus, not equity.[1] Therein lies the jurisdictional dilemma.

1. An action in **mandamus** lies "to compel official performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a lack of any other adequate and appropriate remedy at law." *Delaware River Port Authority v. Thornburgh*, 508 Pa. 11, 20, 493 A.2d 1351, 1355 (1985). A mandamus action is proper to compel the performance of legal duties, even where the existence and scope of the duties must be defined and found in the course of the mandamus action itself. *Id.*

The facts in *Barker* are strikingly similar to those in the instant case. In *Barker*, plaintiff filed a mandamus action to compel Bryn Mawr College, a private institution, to reinstate Margery Barker as a student. The Supreme Court agreed with the lower court that "on the facts showing the character of Bryn Mawr College, as an institution privately conducted which receives no state aid, 'the relation between the student and the college is solely contractual in character, [and] the court of common pleas does not have jurisdiction to issue a writ of mandamus to compel [appellant's] reinstatement[.]' " *Id.* at 122, 122 A. at 221.

The petition's resemblance to a mandamus action grows even more apparent when contrasting the Supreme Court's holding in *Strank v. Mercy Hospital of Johnstown,* 376 Pa. 305, 102 A.2d 170 (1954) (*Strank I* ), with *Strank v. Mercy Hospital of Johnstown,* 383 Pa. 54, 117 A.2d 697 (1955) (*Strank II* ). In *Strank I,* a private nursing school expelled the nursing student/appellant for an infraction of the rules. The nursing student brought an action in mandamus before the Court of Common Pleas of Cambria County. In her complaint, the nursing student sought to obtain a judgment against the school and the hospital commanding them to give to her transfer credits for the two years' work she had completed. With these credits, appellant nursing student could secure advanced standing in some other nursing school.

The nursing student's petition and defendants' answer thereto admitted that The Mercy Hospital of Johnstown was a non-profit corporation operating a school for the education and training of nurses. The sole question before the Supreme Court on appeal was whether the cause of action sued upon and sought to be enforced by mandamus was within the general class of controversies committed to the jurisdiction of the lower court. The Supreme Court, referring to its prior holding in *Barker v. Bryn Mawr College,* 278 Pa. 121, 122 A. 220 (1923), held that the nursing student sought to enforce a right arising out of contract, not one imposed by law, against a private institution. In accordance with its holding in *Barker,* the Supreme Court concluded that the lower court was with-

out jurisdiction to hear the action. *See id.* (court of common pleas lacks jurisdiction to issue writ of mandamus against a non-profit corporation which receives no state aid in order to enforce a contract).

Thereafter, the nursing student initiated the cause of action commonly referred to as *Strank II.* To overcome the jurisdictional problem, the nursing student reformulated her petition for mandamus into a complaint in equity. Rather than merely demanding that the school transfer her credits, the nursing student (1) set forth her oral arrangements made with the school at the time of her admission; (2) alleged that the arrangements and understandings underlying her agreements imposed upon the school the legal duty to give her proper credits for work completed; and (3) averred that the school's failure to issue her credit caused her to lose time (the two years of schooling), a damage for which no adequate remedy at law exists. The school again filed preliminary objections. This time, the lower court dismissed the objections and ordered the school to file an answer. The school appealed.

The Supreme Court, after reviewing the averments set forth in the nurse's complaint, concluded that the new action sounded in equity, not in mandamus. Accordingly, the Supreme Court held that the lower court had jurisdiction over the controversy. In doing so, the Supreme Court noted that the courts of common pleas have jurisdiction to enforce obligations, whether arising under express contracts, written or oral, or implied contracts, including those in which a duty may have resulted from long recognized and established customs and usages. The Supreme Court further recognized that it is the peculiar province of equity to afford relief where the measurement of damages cannot be ascertained. *Strank II.* Thus, jurisdiction is vested where the action properly invokes the equity powers of the lower court.

In the instant case, appellant Tinari seeks relief in the nature of mandamus through an inartfully drafted petition requesting the trial court to compel The Barnes Foundation to rescind his expulsion. The majority points out the inadequacies of the petition and reaches the conclusion that the peti-

tion, therefore, must be a complaint in equity. However, a complaint does not automatically sound in equity merely because it is poorly drafted. A careful reading of Tinari's petition reveals striking similarities to the mandamus petitions filed in *Barker* and *Strank I*, and no resemblance at all to the equity complaint filed in *Strank II*.

Tinari's petition avers that he was not expelled for violations of the rules of conduct, but for his efforts to document violations of the trust indenture. *See* Petition at ¶ 5. Unlike the complaint in *Strank II*, Tinari does not set forth obligations arising out of contract, either express or implied, nor does he aver that a recovery in damages would provide an inadequate remedy. I am compelled to disagree with the majority's contention that an inadequate mandamus petition inescapably results in a complaint in equity.

The majority also notes that "numerous courts have assumed jurisdiction over claims similar to that presented by appellant herein." Slip Opinion at 6 n. 11. In addition to *Strank II*, discussed *supra*, the majority cites *Psi Upsilon v. U. of Pa.*, 404 Pa.Super. 604, 591 A.2d 755 (1991); *Boehm v. U. of Pa. School of Veterinary Medicine*, 392 Pa.Super. 502, 573 A.2d 575 (1990); and *Schulman v. Franklin and Marshall College*, 371 Pa.Super. 345, 538 A.2d 49 (1988) in support of its position. This court's holdings in *Psi Upsilon, Boehm* and *Schulman* addressed the merits of specific requests for **preliminary injunctions,** not generalized complaints in equity. It appears that the majority additionally seeks to characterize Tinari's petition as closely resembling a request for a preliminary injunction.[2] However, I find this analysis is even more strained than a comparison of Tinari's petition to the complaint in *Strank II*. Tinari does not aver even one of the prerequisites to an action seeking a preliminary injunction.

**2.** A preliminary injunction is an extraordinary remedy available only where the party seeking it establishes that: 1) it is necessary to prevent immediate and irreparable harm not compensable in damages, 2) greater harm would result from denying it than from granting it, 3) the right to it is clear and 4) the status quo would be restored if it were to be granted. *John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 7, 369 A.2d 1164, 1167 (1977).

Although the petition is not captioned as an action in mandamus, the nature of the action became apparent to the lower court during a hearing conducted on May 11, 1993. The Orphans' Court opined:

Succinctly put, it became quite obvious at the time of [the] hearing on May 11, 1993, that the court had become embroiled in a matter in which it had no business. See *Barker, appellant, v. Bryn Mawr College*, 278 Pa. 121 [122 A. 220] (1923) [mandamus action].

Trial Court Opinion at page 2. Rather than straining to find a tenuous resemblance to an action in equity, I would affirm the lower court's determination that Tinari's petition seeks relief in mandamus.

Accordingly, I concur with the majority's result, but would affirm the Orphans' Court's determination that it was without jurisdiction to rule in a mandamus action.